[No. C050124. Third Dist. Aug. 29, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ANDREW MASSIE, Defendant and Appellant.

COUNSEL

Candace Hale, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, and John G. McLean, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

SCOTLAND, P. J.—Defendant Richard Andrew Massie was sentenced to consecutive life terms in state prison after a jury found him guilty of torture and sexual penetration by a foreign object, committed with use of a deadly weapon during a first degree burglary.

The sole issue that defendant raises on appeal is whether the evidence is sufficient to support his conviction for torture. We conclude there is ample, indeed overwhelming, evidence to satisfy the elements of torture. Thus, we shall affirm the judgment.

We publish this opinion solely to address an argument that has begun to appear in criminal appeals in the Third Appellate District based on language in *People v. Acevedo* (2003) 105 Cal.App.4th 195 [129 Cal.Rptr.2d 270] (hereafter *Acevedo*) and *People v. Brown* (1989) 216 Cal.App.3d 596 [264 Cal.Rptr. 908] (hereafter *Brown*).

In defendant's view, the evidence in this case is susceptible to a reasonable inference that his brutal and repeated assaults on the victim "occurred in an explosion of violence and animal rage triggered by [the victim's] telling him that Jesus loved him." In other words, defendant argues, there is a reasonable inference that his acts were "spontaneous rather than calculated" and, thus, that he did not act with the specific intent to cause the victim to experience cruel or extreme pain and suffering (an element of torture). For this reason, he says, there is insufficient evidence to uphold his conviction for torture. To support his argument, defendant quotes language from *Acevedo* and *Brown* that when the facts "give equal support to two competing inferences, neither is established." (*Acevedo, supra,* 105 Cal.App.4th at p. 198; see *Brown, supra,* 216 Cal.App.3d at p. 600.) As we will explain, defendant reads too much into this language from *Acevedo* and *Brown*.

An inference is a logical and reasonable conclusion to be drawn from the proof of preliminary facts. It is the province of the trier of fact to decide

whether an inference should be drawn and the weight to be accorded the inference. If the trier of fact's conclusion reasonably and logically follows from the proof of the preliminary facts, an appellate court will not interfere with the conclusion, even if the appellate court believes that a contrary conclusion would have been reasonable. If, on the other hand, the conclusion is mere guesswork, an appellate court will consider it to be conjecture and speculation, which is insufficient to support a judgment.

*Acevedo* and *Brown* involved speculation and correctly concluded that such speculation did not support the convictions in those cases. They cannot be read to stand for the proposition that a conviction must be reversed when reasonable but conflicting inferences could have been drawn by the trier of fact. Such a standard of review would be contrary to California Supreme Court precedent.

## FACTS

On the morning of October 20, 2004, C.T. followed her usual custom. She helped her husband and older children get ready for work and school. After they departed, C.T. turned on the television for her three-year-old child and went to take a shower. She left the bedroom and bathroom doors open so her child could reach her if necessary.

As C.T. showered, defendant looked in her windows and then entered the house. He stood in the bathroom doorway and watched her shower. When she finished showering, C.T. saw defendant's reflection in the mirror. She tried to close the bathroom door, but defendant kept his weight against it. As C.T. leaned against the door, she put on a two-piece swimsuit and a pair of pants. When she heard what she thought was money clinking, she told defendant to take whatever he wanted and leave.

Defendant pushed open the bathroom door and entered, holding a knife in his left hand. When C.T. grabbed at the knife, defendant took hold of her wrists and pulled her toward a walk-in closet. C.T. fought with defendant, but he managed to push her into the closet and down to the floor. He pinned her to the floor with his knee and arm and put the knife on a shelf. Although C.T. continued to struggle, defendant was able to remove her pants and swimsuit bottom.

C.T. told defendant: "Fine, take me, just don't kill me." Defendant then put his finger in C.T.'s vagina, lifted her swimsuit top, and began fondling and sucking her breast. At that point, defendant uttered the only words he uttered during the entire encounter, saying "Oh, yeah" in an erotic way. When C.T. heard defendant unzip his pants, she began fighting again. Defendant pinned

her down and reached for his knife but was unable to find it. He began choking her. C.T. believed she was going to die so she prayed and then relaxed. Defendant then stood up and began pulling things off of the closet shelves, apparently looking for his knife.

C.T. got to her knees and tried to crawl out of the closet. Defendant grabbed her and pushed her head down to her knees. He stepped on her back, and C.T. heard it pop. Defendant then broke glass from a picture frame and began cutting her with broken glass. Among other places, he cut her neck and attempted to cut her wrists. He yanked her head back and forth as though he was trying to break her neck. When C.T. told defendant "Jesus loves you, if you kill me, he's going to forgive you if you ask him," defendant became more violent.

When defendant stopped cutting C.T., he walked out of the closet "like he left to gain his composure." C.T. got up, but defendant came back in and dragged her by the hair into the bathroom. He threw her to the floor and twice stomped on her face with the heel of his boot. When defendant left the bathroom, C.T. tried to escape through the bedroom door; but defendant caught her, dragged her back to the bathroom, threw her on the floor, and kicked her in the face. Then defendant left the bathroom again, and C.T. was able to push out the window screen and escape through the window. She went to the street, where she was helped by neighbors.

During the ordeal, C.T. suffered an acute compression fracture of the fourth thoracic vertebrae. Fortunately, her spinal cord was not injured. However, she was required to wear an immobilizing back brace for several months and will probably have chronic pain and progressive angulation as she ages. She suffered many lacerations, some of which were superficial but some of which were significant. When examined at the hospital, she had a large facial bruise, her eyes were swollen shut, and she had trouble talking due to injuries to her mouth.

## DISCUSSION

Penal Code section 206 states: "Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture. [¶] The crime of torture does not require any proof that the victim suffered pain." (Further section references are to the Penal Code unless otherwise specified.)

Thus, for purposes of section 206, torture has two elements: (1) the infliction of great bodily injury; and (2) the specific intent to cause cruel or

extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose. (*People v. Baker* (2002) 98 Cal.App.4th 1217, 1223 [120 Cal.Rptr.2d 313].) Torture focuses upon the mental state of the perpetrator. (*People v. Hale* (1999) 75 Cal.App.4th 94, 108 [88 Cal.Rptr.2d 904].) In this respect, revenge, extortion, and persuasion are self-explanatory. Sadistic purpose encompasses the common meaning, " 'the infliction of pain on another person for the purpose of experiencing pleasure.' " (*People v. Aguilar* (1997) 58 Cal.App.4th 1196, 1203 [68 Cal.Rptr.2d 619].) While sadistic pleasure is often sexual, the statute does not require a sexual element. (*Ibid.*)

■ Torture does not require the defendant act with premeditation and deliberation, and it does not require that he intend to inflict prolonged pain. (*People v. Hale, supra,* 75 Cal.App.4th at p. 107.) Accordingly, the length of time over which the offense occurred is relevant but not necessarily determinative. (*Id.* at pp. 107–108.) Likewise, the severity of the wounds inflicted is relevant but not necessarily determinative. (*People v. Pre* (2004) 117 Cal.App.4th 413, 420–421 [11 Cal.Rptr.3d 739].)

■ The intent with which a person acts is rarely susceptible of direct proof and usually must be inferred from facts and circumstances surrounding the offense. (§ 21, subd. (a); *People v. Pre, supra,* 117 Cal.App.4th at p. 420.) In reviewing a jury's determination, we view the whole record in a light most favorable to the verdict, drawing all reasonable inferences and resolving all conflicts in support of the jury's verdict. (*Id.* at p. 421.) We must uphold the verdict unless it clearly appears that upon no hypothesis whatever is there sufficient evidence to support it. (*Ibid.*)

### A

Defendant claims there is insufficient evidence to demonstrate that he acted with the intent of causing cruel or extreme pain and suffering. He asserts that when a person acts in "an 'explosion of violence' or 'act of animal fury,' " the person does not harbor specific intent to cause cruel or extreme pain. Thus, according to defendant, evidence that he acted in anger would dispel the specific intent necessary to support a conviction for torture.

In *People v. Steger* (1976) 16 Cal.3d 539 [128 Cal.Rptr. 161, 546 P.2d 665], upon which defendant relies, the California Supreme Court considered section 189, which states in pertinent part: "All murder which is perpetrated by means of . . . torture, or by any other kind of willful, deliberate, and premeditated killing . . . is murder of the first degree." The court held "that murder by means of torture under section 189 is murder committed with a wilful, deliberate, and premeditated intent to inflict extreme and prolonged

pain." (16 Cal.3d at p. 546.) While section 189 does not require a premeditated intent to kill, it does require that the intent to inflict extreme and prolonged pain be the result of calculated deliberation. (16 Cal.3d at p. 546.) It was this requirement of section 189—the requirement of calculated deliberation (which the court described as "the cold-blooded intent to inflict pain for personal gain or satisfaction")—that the court found to be inconsistent with an explosion of unconsidered violence. (16 Cal.3d.at p. 546.)

The intent required for torture as defined in section 206 is not identical to the intent required for torture murder under section 189. (*People v. Hale, supra*, 75 Cal.App.4th at p. 107.) Torture under section 206 does not require premeditation and deliberation, and it does not require an intent to inflict prolonged pain. (*People v. Hale, supra*, at pp. 107–108; *People v. Aguilar, supra*, 58 Cal.App.4th at pp. 1204–1206.)

■ The formation of the intent to inflict injury and the actual infliction of the injury can follow instantaneously. (*People v. Thomas* (1945) 25 Cal.2d 880, 900 [156 P.2d 7].) Moreover, the intent to inflict injury can be formed without any reflection at all. (*Ibid.*) It is for this reason that, in our state's murder statutes, premeditation and deliberation are used to distinguish between murders which are the result of reflection and those which "are the result of mere unconsidered or rash impulse hastily executed." (*Id.* at pp. 900–901; see also *People v. Steger, supra,* 16 Cal.3d at p. 545.)

■ In this light, we reject defendant's contention that evidence of anger precludes a conviction for torture under section 206. As we have noted, intent is required under section 206, but it need not be formed as the result of premeditation and deliberation. An explosion of anger may be inconsistent with the reflection necessary for premeditation and deliberation, but it is not at all inconsistent with an intent to inflict cruel or extreme pain and suffering, which may be the result of "mere unconsidered or rash impulse hastily executed." (*People v. Thomas, supra*, 25 Cal.2d at pp. 900–901.)

■ The role that anger may have played in a criminal attack is a matter for the jury to determine. In many circumstances, the jury may determine that anger was the reason that the accused formed the intent to inflict injury. There is nothing logically or legally inconsistent in such a determination. On the other hand, if the jury believes the accused acted in such a mindless rage that thought processes were impossible, then it may conclude he did not harbor the intent to inflict injury. The proper inferences to be drawn are the province of the jury and not an appellate court. (*People v. Hale, supra*, 75 Cal.App.4th at p. 105.)

■ Here, there is ample evidence to support the jury's finding that defendant harbored the intent to inflict cruel or extreme pain and suffering.

The attack on C.T. was not a brief explosion of violence; it went on for a significant period of time and involved different episodes with breaks during which defendant had ample time to reflect upon his conduct but nevertheless returned to the attack. During the attack, defendant could obviously see the cruel and extreme pain he was inflicting, but he continued the attack. Defendant utilized several different methods of inflicting pain, including choking, bending C.T.'s body to the point that she suffered a compression fracture to a vertebrae, cutting her with broken glass, dragging her by the hair, stomping her face with his boot heels, and kicking her in the face. When defendant could not find his knife, he manufactured a weapon by breaking the glass from a picture frame, which indicates a thought process rather than blind rage. Finally, there is a complete absence of evidence that defendant acted in a blind rage. Neither C.T.'s testimony, nor defendant's confession after his arrest, suggests extreme mindless anger or rage. The evidence overwhelmingly supports the jury's finding that defendant harbored the intent to inflict cruel and extreme pain.

Defendant asserts the evidence is insufficient because " '[w]hen the facts give equal support to two competing inferences, neither is established.' (*People v. Acevedo*[, *supra,*] 105 Cal.App.4th [at p.] 198; *People v. Brown*[, *supra,*] 216 Cal.App.3d [at p.] 600.)" Here, he argues, the evidence gives rise to a reasonable inference that he acted spontaneously, without the intent to cause C.T. to experience cruel or extreme pain and suffering.

"Contrary to what defendant suggests, the judgment is not subject to reversal on appeal simply because the prosecution relied heavily on circumstantial evidence and because conflicting inferences on matters bearing on guilt could be drawn at trial. Although the jury is required to acquit a criminal defendant if it finds the evidence susceptible of two reasonable interpretations, one of which favors guilt and the other innocence, it is the jury, not the appellate court, which must be convinced of his guilt beyond a reasonable doubt. [Citation.] We review the entire record in the light most favorable to the judgment and affirm the convictions as long as a rational trier of fact could have found guilt based on the evidence and inferences reasonably drawn therefrom. [Citation.]" (*People v. Millwee* (1998) 18 Cal.4th 96, 132 [74 Cal.Rptr.2d 418, 954 P.2d 990]; see *People v. Bean* (1988) 46 Cal.3d 919, 932–933 [251 Cal.Rptr. 467, 760 P.2d 996].) Thus, " '[i]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " (*People v. Perez* (1992) 2 Cal.4th 1117, 1124 [9 Cal.Rptr.2d 577, 831 P.2d 1159].)

■ The decisions in *Acevedo* and *Brown* did not involve conflicting inferences. An inference is a logical and reasonable deduction or conclusion

to be drawn from the proof of preliminary facts. (*Juchert v. California Water Service Co.* (1940) 16 Cal.2d 500, 507–508 [106 P.2d 886]; *Ryder v. Bamberger* (1916) 172 Cal. 791, 799 [158 P. 753].) It is the province of the trier of fact to decide whether an inference should be drawn and the weight to be accorded the inference. (*Juchert v. California Water Service Co., supra,* 16 Cal.2d at pp. 507–508; *Ryder v. Bamberger, supra,* 172 Cal. at p. 799.) The strength of an inference may vary widely. In some circumstances, the preliminary facts may virtually compel the conclusion. In other circumstances, the preliminary facts may minimally support the conclusion. But to constitute an inference, the conclusion must to some degree reasonably and logically follow from the preliminary facts. If, upon proof of the preliminary facts, the conclusion is mere guesswork, then we refer to it by such words as speculation, conjecture, surmise, suspicion, and the like; and it cannot rise to the dignity of an inference. (*Juchert v. California Water Service Co., supra,* 16 Cal.2d at p. 506; *Estate of Braycovich* (1957) 153 Cal.App.2d 505, 512 [314 P.2d 767]; *People v. Peloian* (1928) 95 Cal.App. 96, 98 [272 P. 304].)

■ This points to the appropriate standard of appellate review where inferences are concerned. A reviewing court will determine whether a conclusion reasonably and logically follows from proof of the preliminary facts. If so, the conclusion is a permissible inference within the exclusive province of the trier of fact. An appellate court will not interfere with the decision of the trier of fact, even if the court believes that a contrary conclusion would have been reasonable. (*Juchert v. California Water Service Co., supra,* 16 Cal.2d at p. 508.) If, on the other hand, the trier of fact's conclusion is mere guesswork, the appellate court will consider it to be speculation and conjecture that is insufficient to support the judgment. (*Estate of Braycovich, supra,* 153 Cal.App.2d at pp. 512–513; *People v. Peloian, supra,* 95 Cal.App. at pp. 98–99.)

The decisions in *Acevedo* and *Brown* involved speculation on charges of evading a peace officer. (Veh. Code, §§ 2800.1, 2800.2.) An essential element of the offense is that the police car used in the pursuit exhibited at least one lighted red lamp visible from the front. In *Brown,* the pursuit car was equipped with three light options, only one of which included a red light. The pursuing officer testified she activated her overhead lights, but she could not remember which option that she utilized. (*Brown, supra,* 216 Cal.App.3d at p. 599.) Thus, an assumption that a red light was activated would be a mere guess, i.e., speculation. In *Acevedo,* the pursuing officer testified he activated his overhead emergency lights, but there was no evidence that one of the lights was red. (*Acevedo, supra,* 105 Cal.App.4th at p. 197.) Thus, it would have been mere speculation to assume a lighted red lamp was exhibited. It is well established that speculation will not support a judgment.

*Acevedo* and *Brown* cannot be read to stand for the proposition that a conviction must be reversed when reasonable but conflicting inferences could have been drawn at trial. Such a standard of review would be inconsistent with the long-standing pronouncements of our Supreme Court. (*People v. Millwee, supra,* 18 Cal.4th at p. 132; *People v. Bean, supra,* 46 Cal.3d at pp. 932–933; *Juchert v. California Water Service Co., supra,* 16 Cal.2d at pp. 507–508; *Ryder v. Bamberger, supra,* 172 Cal. at p. 799.)

In any event, defendant is wrong in claiming the evidence is equally susceptible of conflicting inferences. As we have noted, anger is not inconsistent with an intent to inflict cruel or extreme pain and suffering. An inference that defendant acted in anger would not dispel the intent required for torture. The record does not suggest that defendant acted in the kind of mindless rage that would preclude the thought process of forming an intent to inflict cruel or extreme pain and suffering.

## B

Defendant next claims the evidence is insufficient to support a finding that he acted for the purpose of revenge, extortion, persuasion, or any sadistic purpose. He asserts "[t]here was no suggestion that [his] actions were taken for the purpose of revenge, extortion or persuasion, so it appears that conviction was based on the catch-all 'for any sadistic purpose.' " We reject the premise of this assertion.

The encounter began when defendant seized C.T. in the bathroom, pushed her onto the floor of the walk-in closet, and succeeded in removing her pants and swimsuit bottom. At that point, C.T. thought she might as well submit; so she told defendant: "Fine, take me, just don't kill me." C.T. submitted while defendant sexually assaulted her with his finger and mouth. When C.T. heard defendant unzip his pants, she found that she could not submit to rape and began fighting again. Defendant responded with a course of conduct that was certain to cause cruel and extreme pain. This evidence gives rise to a reasonable, in fact compelling, inference that he inflicted pain in revenge because C.T. reneged on her agreement to submit to rape.

It is also a reasonable inference that defendant had not abandoned his intent to commit rape. A reasonable inference follows that he intentionally inflicted cruel and extreme pain in an effort to persuade C.T. to relent and submit to rape.

Finally, it is readily apparent to us that a reasonable jury could have concluded that the gratuitous and repeated acts of extreme brutality

against C.T. were committed for the sadistic purpose of providing defendant pleasure, whether sexual or simply a perverted enjoyment of causing the victim to suffer.

## DISPOSITION

The judgment is affirmed.

Hull, J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 13, 2006, S147180.