Filed 2/26/14  In re Terrance G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re TERRANCE G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TERRANCE G.,<br><br>Defendant and Appellant. | F067005<br><br>(Super. Ct. No. JW129308-02)<br><br>**OPINION** |

---

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Peter A. Warmerdam, Juvenile Court Referee.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*] Before Gomes, Acting P.J., Franson, J. and Peña, J.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Terrance G., a minor, appeals from a dispositional order of the Kern County Juvenile Court committing him to a juvenile camp based upon multiple sustained wardship petitions and probation violations (Welf. & Inst. Code, §§ 602, 777).  He contends the evidence supporting a petition sustained on March 14, 2013 was insufficient to prove he made felonious criminal threats in violation of Penal Code section 422.[1]  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Terrance was adjudged a ward of the court on September 28, 2012 pursuant to Welfare and Institutions Code section 602 after admitting to misdemeanor violations of sections 240 (assault) and 422 (criminal threats).  He was fourteen years old at the time.  The adjudication arose from an argument between Terrance and his mother, Terri G.,[2] regarding his attendance at school.  Terrance picked up a baseball bat while they were arguing, boasted of his gang affiliations, and threatened to kill her.  The juvenile court granted probation and released the minor to his mother's custody.

The terms of probation called for Terrance to attend the Blanton Academy and successfully complete its programs.  He violated this requirement in November 2012 as a result of excessive absences.  A disposition hearing on the probation violation was held on December 17, 2012, at which time the juvenile court ordered Terrance's commitment to juvenile hall for a period of 45 days.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The mother's first name is alternately spelled "Terri" and "Terry" in different parts of the record.  We will follow the spelling reflected in the clerk's transcript.

On February 20, 2013, the Kern County District Attorney filed a unitary petition under Welfare and Institutions Code sections 602 and 777 alleging felony counts of criminal threats (Counts 1 & 2) and probation violations (Count 3), with a notice of intent to rely upon previously sustained petitions to aggregate and extend the maximum term of confinement. Terri G. was identified as the victim in Count 1. The victim identified in Count 2 was Erika B., a woman who resided with Terrance and Terri at the time of the offense.

A contested jurisdictional hearing was held on March 14, 2013. Terrance's mother was the only witness to testify at the hearing. Terri described an incident from approximately one month earlier which occurred after she had accused her son of stealing money from his grandmother. The accusation led to a heated argument. After breaking a screen door on his way out of the house, Terrance dared his mother to come near him and threatened to "lay [her] out" if she did. He also threatened to kill her.

The mother's testimony regarding Terrance's actions towards Erika B. was as follows:

"Q. Was there anybody else present at the home at that time?

"A. Erika [B.]

"Q. That's your roommate?

"A. Yes. She lives in the house.

"Q. At some point did [Erika] come out of the house?

"A. She was at the doorway. She never came fully out.

"Q. Did he ever yell anything else regarding [Erika]?

"A. Yes. He told her that he was sick of her being there, and he'd kill her too. [He also said] she could get whomever she wanted [to protect her] because he had bangers.

"Q. Are you familiar with the term "bangers," ma'am?

"A. Like gang bangers; that's the only thing I would understand it to be.

3.

"Q. Did you hear him say anything else to [Erika]?

"A. That she could get her son or whoever she wanted – and she had a baby – we have twins. She had one of the babies, and he said [he would] take the babies and throw them against the wall and you can tell their momma and she can get who she wants.

"Q. Was she holding the baby at the time?

"A. Yes. And then she left and went and called the police."

The juvenile court found the allegations in Counts 2 and 3 to be true. Count 1 was dismissed for insufficient evidence (Welf. & Inst. Code, § 701.1). A motion to reduce Count 2 to a misdemeanor was denied. Terrance was continued as a ward of the court and committed to a local facility, Camp Erwin Owen. The maximum term of confinement was set at three years and two months, less 99 days credit for time served.

## DISCUSSION

The question presented is whether sufficient evidence supports the juvenile court's finding that Terrance made criminal threats, as defined by section 422, against Erika B. The answer is yes, because the following conclusions can be drawn from the record: (1) the accused minor willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) the communication was specifically intended to be taken as a threat, even if there was no intent to actually carry it out; (3) "on its face and under the circumstances in which it [was] made, [the threat was] so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat[;]" (4) the threat actually caused the person to whom it was directed "to be in sustained fear for his or her own safety or for his or her immediate family's safety[;]" and (5) the threatened person's fear was reasonable under the circumstances. (§ 422, subd. (a); *In re George T*. (2004) 33 Cal.4th 620, 630.)

"We review claims of insufficient evidence by examining the entire record in the light most favorable to the judgment below … to determine if substantial evidence exists for a reasonable trier of fact to find the counts against the minor true beyond a reasonable doubt. Substantial evidence must be reasonable, credible, and of solid value. We also presume the existence of every fact the lower court could reasonably deduce from the evidence in support of its judgment." (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196, citations omitted.) The standard of review places a heavy burden on the appellant to demonstrate that the evidence does not support the juvenile court's findings. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1136.)

The first two elements of section 422 require little discussion, as the record easily permits the inference that Terrence directed threats of death and serious bodily harm towards Erika B. and intended his words to be interpreted as such. The next step is to determine whether Terrance's behavior conveyed "a gravity of purpose and an immediate prospect of execution of the threat." (§ 422, subd. (a).) This third element is evaluated under the totality of the circumstances. (*People v. Butler* (2000) 85 Cal.App.4th 745, 753 (*Butler*).) Although the statute speaks in terms of "unequivocal, unconditional, immediate, and specific" threats, these characteristics "are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim." (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157-1158.)

Terrance's words were disturbingly specific and unconditional with respect to Erika B.'s infant children. His threat to "take the babies and throw them against the wall" could have reasonably been construed as an expression of the intent to inflict serious evil upon another person. (See *In re Ryan D.* (2002) 100 Cal.App.4th 854, 863.) This conclusion is supported by Terrance's history of anger management problems and aggression towards members of his household. (*Butler*, *supra*, 85 Cal.App.4th at p. 754 ["The parties' history can also be considered as one of the relevant circumstances."].)

5.

The immediacy factor may be inferred from the minor's state of anger, physical proximity to the victim, and practical ability to carry out the threat. (See *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1348 (*Fierro*) [defendant's proximity to victim "added weight to his words."].)

"The fourth and fifth elements of section 422 require the victim 'reasonably to be in sustained fear' for his or her own safety or the safety of his or her family. [Citation.] As used in the statute, 'sustained' has been defined to mean 'a period of time that extends beyond what is momentary, fleeting, or transitory.'" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 808.) Sustained fear may nevertheless occur during a short period of time. (See, e.g., *Fierro*, *supra*, 180 Cal.App.4th at p. 1349 ["When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.'"].)

The evidence indicates Erika B. responded to Terrance's words by moving away from him and calling the police. A call to police constitutes evidence of a victim's fearful reaction to a threat. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538.) As for the fifth element, it is not outside the bounds of reason for a mother to fear for the safety of her infant child when an irate and out-of-control teenager threatens to throw her babies against a wall, especially under the circumstances of this case. It follows that the juvenile court had a reasonable basis upon which to conclude the victim experienced reasonable and sustained fear for her own safety and/or the safety of an immediate family member.

Terrance claims the findings made at the jurisdictional hearing were impermissibly speculative because Erika B. did not testify. However, as noted by respondent, appellant's opening brief ignores the evidence of Erika's presence during the subject incident, the threats made directly to her by Terrance, and her reaction to those threats. In his reply, appellant offers nothing more than his own favorable interpretation of the evidence. For example, he argues, "It is just as reasonable that Erika called the police because of her knowledge that Terr[i] had assaulted Terrance in the past and was in fear

that she would assault him on this occasion.  It is just as plausible that Erika called the police because it was embarrassing to have Terrance and his mother outside arguing loudly … Who knows why Erika called the police? … [W]e should not use conjecture to speculate as to what she would have testified too [sic] had she been called as a witness."

Appellant's arguments disregard the standard of review.  "In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact.  *All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.  Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact*."  (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547, italics added.)

As detailed in the foregoing discussion, the juvenile court's findings are consistent with reasonable inferences derived from evidence in the record.  Such findings are not speculative.  (See *People v. Massie* (2006) 142 Cal.App.4th 365, 373-374 [explaining the difference between inference and speculation].)  We conclude there is substantial evidence to support the judgment and find no grounds for reversal.

## DISPOSITION

The judgment is affirmed.