Filed 5/25/16  P. v. Hunter CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B263077 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA426868) |
| v. | |
| TYRONE HUNTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Bernie C. LaForteza, Judge.  Affirmed.

Law Office of Eric Cioffi and Eric Cioffi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Abtin Amir, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Tyrone Hunter (defendant) appeals from his conviction of unlawful possession of a firearm by a felon. Defendant contends that his conviction was not supported by substantial evidence, and he asks that we review the in camera hearing on his *Pitchess* discovery motion.[1] As we are unable to review the in camera hearing, and conclude that substantial evidence supports the conviction, we affirm the judgment.

## BACKGROUND

In an amended information filed against defendant and two others, defendant was charged in count 3 with unlawful possession of a firearm by a felon, in violation of Penal Code section 29800, subdivision (a)(1).[2] The information also alleged that defendant had served three prior prison terms within the meaning of section 667.5, subdivision (b), and that defendant's prior conviction of first degree burglary was a serious or violent felony within the meaning of the "Three Strikes" law, sections 667, subdivisions (b)-(j), and 1170.12, subdivisions (a)-(d).

Defendant was tried jointly with one of his codefendants, Rayshon Mitchell (Mitchell). After the jury found both defendants guilty as charged, defendant admitted his prior convictions. On March 26, 2015, the trial court struck the prison-prior allegations and sentenced defendant to the middle term of two years, doubled as a second strike, for a total of four years in prison. The court awarded a combined total of 534 days of presentence custody credit, and imposed mandatory fines and fees. Defendant filed a timely notice of appeal from the judgment.

---

[1] See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); Penal Code sections 832.7 and 832.8; Evidence Code sections 1043 through 1045. As the sealed transcript of the in camera *Pitchess* hearing is not part of the normal appellate record, it is the defendant's obligation to apply to the superior court to have it prepared and transmitted to the appellate court. (Cal. Rules of Court, rules 8.320, 8.324.) Defendant failed to do so. At the time the matter was calendared for oral argument, defendant submitted a motion to this court for augmentation of the record. As the motion did not show good cause for the failure to make a timely request, it was denied, and the *Pitchess* hearing transcript has not been included in the appellate record.

[2] All further statutory references are to the Penal Code, unless otherwise indicated.

**Prosecution evidence[3]**

In a response to a radio call on July 3, 2014, Los Angeles Police Officers Rodney Williams and his partner Andrew Rea arrived in their patrol car at an apartment complex on West 74th Street at 10:50 p.m. Other patrol cars also responded, and in all, there were more than a dozen police officers on the scene. A large group of 20 to 30 people were standing in the street in front of the apartment building, blocking vehicles and the sidewalk. There were also about 10 people just inside the building's gate. Though it was dark, the group was standing under a streetlight.

Officer Williams testified that as he double-parked the patrol car, he saw defendant, whom the officer identified in court, among those in the front yard of the building behind the gate. Defendant was wearing a dark gray sweater with bright green and royal blue lettering and black pants. Officer Williams was still in his car when he first saw defendant from a distance of 10 to 12 feet, and within one or two seconds after Officer Williams saw him, defendant began running toward the rear of the property. Officer Williams gave chase on foot and observed defendant turn into a driveway between two buildings. Officer Williams shone his flashlight ahead as he ran approximately 12 to 15 feet behind defendant. Officer Williams saw defendant approach a white barrel-shaped trash can about halfway down the unlit driveway, which was 10 to 15 yards long. Though at first defendant ran with his hands free, when he was approximately seven feet into the driveway, Officer Williams observed defendant remove a black handgun from the area of his front waistband, run for awhile with the gun in his right hand, and then place the gun into the trash can. Defendant ignored the officer's command to stop, and the pursuit continued through the driveway and around to the front gate, where defendant attempted to blend in with the group.

Within approximately 10 seconds after defendant discarded the gun, Officer Williams and another officer detained defendant. Officer Williams left defendant with that other officer, returned to the trash can, and retrieved the handgun, which was the

---

[3] The defense rested after the prosecution case without presenting affirmative evidence. Neither defendant nor Mitchell testified.

only object in the trash can. When Officer Williams inspected the gun, he found that it was fully loaded with nine-millimeter rounds in the magazine. He did not use gloves to handle the gun as it was important for safety reasons to recover the firearm quickly. Officer Williams did not photograph the gun in the trash can, did not request either a gunshot residue test or fingerprint analysis.

Defendant was not the only one of the group who tried to leave the area when the police arrived. Mitchell initially walked away, but ran when Officer Rea followed him. Officer Rea identified Mitchell in court and testified that he was wearing a loose black "hoodie." Before Mitchell began to run, he placed his right hand over his front waistband, causing Officer Rea to believe Mitchell had a firearm concealed there. Accompanied by Officer Courtney Pearson, Officer Rea chased Mitchell. As Officer Rea approached within two to five feet of him, Mitchell removed a stainless steel revolver from his waistband and dropped it as he ran. Moments later Mitchell dropped to the ground and Officer Rea placed him in custody. The revolver was retrieved from the spot where Mitchell had dropped it, and it was determined to be loaded with five live rounds. Less than a minute passed from the time Mitchell dropped the gun to when it was recovered. The lighting throughout the pursuit was good as there was a streetlight and several porch lights on, and Officer Rea used his flashlight.

Officer Pearson took possession of both firearms and the ammunition from Officers Williams and Rea. From Officer Williams came a blue steel nine-millimeter semiautomatic handgun, which Officer Pearson identified as depicted in the photograph admitted as exhibit 3, and Officer Rea turned over a stainless steel, .38-calibur special revolver with a black grip, which was depicted in the photograph admitted as exhibit 5. After the arrests Officer Pearson listed the names of each person booked that night in a report. Officer Pearson could not recall what either defendant or Mitchell had been wearing, but after reviewing his report he recalled that Mitchell wore a gray sweater, black shoes, and gray pants and that defendant wore a black shirt, black shorts, and black shoes.

4

The parties stipulated that defendant and Mitchell had each been previously convicted of a felony.

## DISCUSSION

Defendant contends that his conviction was not supported by substantial evidence. In particular he challenges Officer Williams's testimony that he saw defendant remove a gun and run down an alleyway, arguing that it "strains belief to the breaking point [and] cannot form the basis for blindly concluding there is substantial evidence supporting the conviction in this matter."

When a criminal conviction is challenged as lacking sufficient evidentiary support, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 (*Johnson*); see also *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) "[B]ecause 'we *must* begin with the presumption that the evidence . . . *was* sufficient,' it is defendant, as the appellant, who 'bears the burden of convincing us otherwise.' [Citation.]" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1430.) Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Defendant acknowledges that the substantial evidence test requires a review of the evidence in the light most favorable to the judgment. However, relying on language in *People v. Bassett* (1968) 69 Cal.2d 122, 138, and *Johnson, supra,* 26 Cal.3d at page 577, defendant points out that the reviewing court's duty is to review the all the evidence presented, not simply the evidence favorable to the respondent. While of course this is correct, we do not reweigh the evidence or resolve conflicts in the evidence. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Nothing in the cases cited by defendant permits the reviewing court to redetermine issues of credibility, reweigh the evidence, or draw its own inferences and deductions. We must presume in support of the judgment the

5

existence of every fact the jury could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

"""""To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]""""" (*People v. Mayberry* (1975) 15 Cal.3d 143, 150.) An inference is defined by statute as "a deduction of fact that may logically and reasonably be drawn from another fact, or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) An inference is drawn from evidence, not from speculation as to probabilities. (*People v. Morris* (1988) 46 Cal.3d 1, 21, disapproved on another point in *In re Sassounian* (1995) 9 Cal.4th 535, 543.)

Defendant contends that some of the facts in evidence were physically impossible or false, and that the falsity or impossibility of each is apparent without resort to inferences or deductions. However, a close look at each such fact and defendant's reasoning reveals that his argument relies entirely on inferences, deductions, suspicion, and speculation. In essence, defendant contends: (1) that Officer Williams's testimony that defendant wore a gray sweater with bright lettering was false, and that he must have seen someone else, because the officer's description conflicted with the description in the police report; (2) that Officer Williams could not have first seen defendant from a distance of as little as 10 to 12 feet, because he double-parked when he arrived; thus, there must have been two car widths, space between the cars for Officer Rea to exit, a grassy parkway, a sidewalk, and a setback gate between Officer Williams and the man he saw[4]; (3) that Officer Williams could not have seen defendant take out a gun when

---

[4]    Defendant represents that the gate was set back a few feet from the sidewalk. He has not referred to evidence of this in the record, other than exhibit 2, a photograph of the property that shows an iron-rail gate closely abutting the sidewalk.

6

defendant was about seven feet from his first position behind the gate, because there was a crowd of 20 or more people on the street, sidewalk, and behind the gate; (4) that defendant must have been at least 20 feet away from Officer Williams, not 12 to 15 feet when the officer gave chase, because the officer must have taken the time to put his car into park, and then he had to open his door, exit his vehicle, and then run around the hood in order to give chase; (5) that the gun could not have belonged to defendant, because there was no fingerprint, DNA, or gunshot residue evidence to corroborate Officer Williams's testimony; and (6) that Officer Williams could not have seen the gun in defendant's hand because there was no lighting in the driveway between the buildings.

With regard to the first point, defendant has selected one of two conflicting descriptions of defendant's clothing; he then deems the description by Officer Williams to be false, and having resolved that conflict in his favor, infers that it was not defendant whom Officer Williams saw that night, but someone else. Defendant cites no authority requiring the jury to disbelieve Officer Williams simply because there was a conflicting description of defendant's clothing in the police report.

Defendant's trial counsel made a similar argument in summation and still the jury resolved the conflict against defendant. As respondent suggests, the verdict implies that the jury found Officer Williams's first-hand observations more reliable than the information contained in the police report. The jury was entitled to believe Officer Williams, notwithstanding any discrepancies or conflicts. (See *People v. Mayberry*, *supra*, 15 Cal.3d at p. 150.) We thus accept the jury's evaluation of the credibility of Officer Williams and do not substitute it for defendant's selection. (See *People v. Jones* (1990) 51 Cal.3d 294, 314.)

Defendant's remaining assertions of impossibility or falsity are not inferences drawn from evidence or even conflicts in the evidence, but rather simple speculation. Defendant suggests that Officer Williams could not have seen defendant or the gun in his hand because it would be difficult to identify a particular person in a crowd of 20 from the distances Officer Williams estimated, or to see a gun in the person's hand in the absence of a streetlight in the driveway. Defendant cites no evidence in the record

7

demonstrating that the crowd or the estimated distances would necessarily preclude identifying defendant, or demonstrating that the officer's flashlight insufficiently illuminated defendant while he ran and discarded the firearm. "[S]peculation, conjecture, surmise, suspicion, and the like . . . cannot rise to the dignity of an inference. [Citations.]" (*People v. Massie* (2006) 142 Cal.App.4th 365, 374.) Moreover, reversal cannot be justified by conflicting inferences, even if they are equally reasonable as those drawn by the jury. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.) It follows that reversal cannot be justified by defendant's speculation that circumstances would support findings contrary to those made by the jury.

In addition, defendant has cited no authority requiring corroboration of the officer's observation of the gun or the officer's observation of defendant discarding the gun in the trash can, such as with DNA or fingerprints. Defendant cites *In re Eugene M.* (1976) 55 Cal.App.3d 650, which held under very different facts, that an uncorroborated "prior unsworn out-of-court statement given by an apparent accomplice under threat of prosecution and thereafter repudiated under oath . . . fails to meet the necessary standard that it inspire confidence and be of solid value. [Citation.]" (*Id.* at p. 659.) As Officer Williams was not an accomplice, and his testimony was given under oath in court regarding his own observations, which he did not repudiate, defendant's comparison to that case fails.

In fact, the testimony of a single witness, if believed, is sufficient for proof of any fact. (Evid. Code, § 411.) As the jury clearly believed Officer Williams, and his testimony is uncontradicted -- as opposed to inferences and speculation -- by other evidence, we find no merit to defendant's contention that the officer's testimony "strains reality to the breaking point."[5] Defendant has not demonstrated that Officer Williams's

_____

[5]    In an apparent effort to prevent this case from turning "into nothing more than a blind adoption of law enforcement's version of events," defendant suggests that we evaluate the evidence "with eyes wide open"; and he has provided links to news articles and a blog on the subject of police officers who lie under oath. As we construe the argument, defendant is requesting an independent assessment of the officer's credibility, which we must refuse. "Because the trier of fact is in a superior position to observe the

8

observations were impossible; nor has he shown, without resorting to his own inferences, deductions, and speculation, that the officer's testimony was false.  We conclude that Officer Williams's testimony provided substantial evidence to support the jury's conclusion that defendant was in possession of a firearm.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT

---

demeanor of witnesses, credibility determinations are not subject to independent review." (*In re George T*. (2004) 33 Cal.4th 620, 634.)