Filed 11/15/23  P. v. Willis CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

HUGH OBRINE WILLIS,

      Defendant and Appellant.

E078414

(Super.Ct.No. INF2000876)

OPINION

APPEAL from the Superior Court of Riverside County.  Dale R. Wells, Judge. Affirmed.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted Hugh Obrine Willis of torture, child endangerment, and willful infliction of corporal punishment on a child. (Pen. Code, §§ 206, 273a, subd. (a), 273d, subd. (a); unlabeled statutory citations refer to the Penal Code.) The victim of the offenses was Willis's son, John Doe (John). The torture conviction required the jury to find that Willis inflicted great bodily injury "with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose." (§ 206.) Willis argues that the record does not contain substantial evidence that he acted for the purpose of revenge, extortion, persuasion, or for any sadistic purpose. We disagree and affirm.

BACKGROUND

Willis has two sons, Adam Doe (Adam) and John. Lorri Willis (Lorri) is the children's mother and Willis's wife.[1] The family was living at a motel in June 2020. Twelve-year-old John found a hypodermic needle and syringe in the parking lot and stabbed 14-year-old Adam with the needle during a fight. To discipline John, Willis struck John numerous times. Willis made John strip off his clothes, lie on the bed face down, and stretch his hands above his head. Willis then hit John with a metal hanger and a bungee cord on the child's back, arms, buttocks, legs, and head. John could not recall how many times Willis struck him, but it was more than 10. John was squirming, and Willis told him to lie still. When the child did not stop squirming, Willis made Lorri hold John's legs. Willis also punched John in the eye, on the forehead, and on the chest, and

---

[1]    We refer to Lorri by her first name for the sake of clarity. No disrespect is intended.

he pressed his forearm against the back of John's neck for several seconds. Willis took his arm off John's neck when John said that he could not breathe. After the beating, Willis made John smoke a cigarette. John was bleeding from his ear, and he could not hear from that ear for several hours afterward. He also had a "busted" lip, bruises on his leg, buttocks, and back, and a black eye.

At the time of those events, Willis weighed 190 pounds and was five feet 10 inches tall. John, who was small for his age, weighed 58 pounds and was four feet six inches tall.

Lorri witnessed the beating and confirmed that she held John's legs for roughly five minutes when Willis instructed her to do so. She complied because she did not feel like she had a choice. She said that the beating was hard to watch, and she usually left the room when Willis hit the children. John was crying and screaming and looked like he was in pain. Willis "kept telling [John] to shut up and be quiet." After the beating, John was drooling, and blood was coming out of his mouth.

Lorri said that Willis always had a reason for hitting John and Adam, but she thought that the beatings were unnecessary on a couple of occasions. Lorri sometimes heard Willis say, "'If you like it, I love it,'" before hitting the children. Willis did not appear happy or joyful during the beatings.

Adam also witnessed parts of the beating. He went into the bathroom because he was scared and did not want to see it, but he poked his head out of the bathroom four or five times. He saw Willis hit John with the bungee cord "a lot," maybe 20 to 30 times,

3

and choke John. Willis also used a metal hanger to hit John. Adam heard John crying and yelling, and he heard Lorri tell Willis to stop, but Willis refused and said that he was disciplining his child. Willis looked angry.

The day after Willis beat John, a neighbor at the motel called 911 and reported a child crying throughout the night. A police officer responded to the call for a welfare check and observed bruising all over John's body. Willis told the officer that he was responsible for "the whooping" and John's injuries. Willis said that he struck John to discipline him for the needle incident; he was "fearful" that if he did not beat the child, John would not learn and would do the same thing again. He also said that he did not strike John out of anger, and he never told the officer that he enjoyed striking the child. Lorri told the officer that Willis struck John to discipline him for the needle incident and because they had caught the child watching pornography.

The officer referred John and Adam to the Riverside County Child Assessment Team for forensic interviews. John's statements to the forensic interviewer were largely consistent with his trial testimony: He described how Willis made him strip, hit him with a bungee cord, choked him, punched him in the face, and made Lorri hold his legs. John described Willis as "pretty mean," and he was scared that Willis might kill him someday by hitting "something vital." In Adam's forensic interview, he likewise described how Willis choked John, punched him in the face, and hit him with the bungee cord.

John also underwent a forensic medical evaluation. John told the nurse practitioner that his ears were tender and his buttocks were very sore. The nurse

observed much bruising on John's ears and dried blood in one of his ear canals. There was a small abrasion on the child's forehead, purple and red bruising on his eyelid and above the eye, a red linear bruise on his face, and a broken blood vessel in one of his eyes. He had a long linear pattern bruise on the front of one thigh and a small bruise in the pubic area, but most of his injuries were on the back of his body. There were a few red pattern bruises on his upper back, deep purple pattern bruises on his forearms, and very distinct pattern bruises on the back of both thighs. The distinctive bruises were a hook pattern consistent with a hanger. The other pattern bruises were long linear marks consistent with a bungee cord. John had extensive bruising on his buttocks that did not have a specific pattern. The "areas of bruising kind of just joined together" so that both buttocks "were essentially just large areas of purple and red bruise." It was difficult to tell how many impacts caused the entirety of the bruising on his buttocks. John's bloodwork showed that there had been extensive injury to his muscles.

John and Adam both described prior beatings at trial and during their forensic interviews. When John was 11 years old, he got in trouble for using Lorri's phone while the rest of the family was sleeping. Willis told Lorri and Adam to take a walk, and he made John take off his clothes and lie face down on the bed. Willis hit John with an extension cord for four to five minutes, and when John would not stop squirming, Willis taped him to a chair. Two days before the charged offense, Willis hit John with a metal hanger roughly six times when the child picked up a pipe he found outside. John said

5

that Willis typically looked mad or angry when he was hitting John, and he had never seen Willis look happy or joyful.

As for Adam, he once got in trouble for buying the wrong chips at the store. Willis made Adam take his clothes off and hit him with an extension cord. Willis soaked the extension cord in water first and told Adam that the water would make the cord hurt more. Adam was screaming during the beating, so Willis put on his headphones and played music loud enough for Adam to hear it. Willis then continued hitting Adam with the cord. The child dropped to the floor after Willis hit him numerous times. Willis told him to get up, but Adam refused, and Willis hit him in the head with the cord. On another occasion, Adam got in trouble for drinking a soda at the store and putting it back on the shelf. Willis punched Adam in the head, and after the child started crying, Willis said that he would "'give [Adam] something to cry about.'" He then hit Adam on the legs several times with an extension cord.

Adam said that during or before beatings, Willis often said, "'If you like it, I love it.'" Willis did not enjoy hitting Adam and John as far as Adam could tell, but he "really wasn't sure." Willis would hit them until he tired, and the beatings could "go on forever." On one occasion, Willis took a break to smoke, and then he hit Adam more afterward. Adam was scared that Willis would kill him and John or hurt them severely someday.

When the forensic interviewer asked Adam how he felt about all of the things he told her, he replied: "Sad. I just . . . feel tortured." She asked him to say more about that

feeling, and he responded: "Just getting whooped. Like, his whooping us is fun for him." At trial, Adam explained that when he said the beatings were fun for Willis, he meant that sometimes Willis would "just find a reason to whoop" them. Adam further explained: "[H]e would just say we did stuff, and it wouldn't even be true half the time. So he would just whoop us over no reason."

The jury found Willis guilty of torture, child endangerment, and willful infliction of corporal punishment on a child. The court sentenced him to prison for seven years to life on the torture count and stayed his prison terms on the other counts.

## DISCUSSION

Willis argues that the record does not contain substantial evidence that he possessed the mental state required for his torture conviction. We disagree.

In resolving a substantial evidence challenge, we review "the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) We resolve all conflicts in the evidence and credibility questions in favor of the verdict. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We do not reweigh the evidence or reevaluate witness credibility. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

"[T]orture has two elements: (1) the infliction of great bodily injury; and (2) the specific intent to cause cruel or extreme pain and suffering for the purpose of revenge,

7

extortion, persuasion, or for any sadistic purpose." (*People v. Massie* (2006) 142 Cal.App.4th 365, 370-371 (*Massie*).) "Sadistic purpose encompasses the common meaning, "'the infliction of pain on another person for the purpose of experiencing pleasure.'"" (*Id.* at p. 371.)

"The intent with which a person acts is rarely susceptible of direct proof and usually must be inferred from facts and circumstances surrounding the offense." (*Massie*, *supra*, 142 Cal.App.4th at p. 371.) In addition, evidence of uncharged acts of child abuse may be used to show the mental state required for the charged offenses. (Evid. Code, § 1101, subd. (b); *People v. Evers* (1992) 10 Cal.App.4th 588, 598.)

Willis argues that the record does not contain substantial evidence that he had a sadistic purpose for inflicting pain on John. Willis asserts that he had "different motive[s]," namely, he was angry with John for sticking Adam with the needle, he feared for Adam's safety, and he disapproved of John watching pornography. But even if the evidence shows that Willis beat John to discipline him for some wrong, the jury could reasonably infer from the evidence that Willis also took pleasure in abusing John. The beating was severe and gratuitous. Willis made John strip off his clothes and struck the child's bare skin numerous times with two different implements, a metal hanger and a bungee cord. He also punched John and choked him, and he made John's mother hold the child's legs when the child was squirming in pain. The beating lasted roughly five minutes, and John suffered bruises all over his body. His buttocks in particular were completely covered in bruises.

8

The gratuitous nature of the beating was familiar to the children. For instance, Adam described a beating Willis gave him for buying the wrong bag of chips. Willis also made Adam strip off his clothes and hit the child with a wet extension cord numerous times. Willis put on loud music when Adam screamed, and Willis continued to hit the child. And when Adam fell to the ground, Willis told him to get up and continued to hit him. Both children were afraid that Willis would kill them someday when he was disciplining them for some actual or perceived wrong. Adam thought that the beatings were fun for Willis because he seemed to find any reason to hit them, whether that reason was based in fact or not. And both Adam and Lorri said that when Willis hit the children, he told them, "'If you like it, I love it.'" In light of all the foregoing evidence, the jurors could reasonably conclude that Willis inflicted extreme pain on John for more than mere discipline. They could reasonably infer that he experienced a sadistic pleasure in causing John pain. (*People v. Flores* (2016) 2 Cal.App.5th 855, 872 [jury could have reasonably concluded that the defendants intended to cause extreme pain and suffering for the purpose of persuasion when they disciplined the child victims by beating them and depriving them of food]; *Massie*, *supra*, 142 Cal.App.4th at pp. 375-376 ["a reasonable jury could have concluded that the gratuitous and repeated acts of extreme brutality" against the victim "were committed for the sadistic purpose of providing defendant pleasure"].)

Willis argues that this case is like *People v. Steger* (1976) 16 Cal.3d 539 (*Steger*), but *Steger* in inapposite. *Steger* involved a first degree murder conviction in which the

9

prosecution relied on a torture murder theory. (*Id.* at pp. 542-543; see § 189, subd. (a) ["All murder that is perpetrated by means of . . . torture . . . is murder of the first degree"].) The defendant severely beat her three-year-old stepdaughter over the course of weeks, eventually causing the child's death from head injuries. (*Steger, supra*, at p. 543.) The court held that torture murder required the willful, deliberate, and premeditated "intent to inflict extreme and prolonged pain" (*id.* at p. 546), but there was "not one shred of evidence to support a finding" that the defendant beat her stepdaughter "with cold-blooded intent to inflict extreme and prolonged pain." (*Id.* at p. 548.) The court reasoned: "Rather, the evidence introduced by the People paints defendant as a tormented woman, continually frustrated by her inability to control her stepchild's behavior. The beatings were a misguided, irrational and totally unjustifiable attempt at discipline; but they were not in a criminal sense [willful], deliberate, or premeditated." (*Ibid.*) The court thus modified the judgment by reducing the defendant's conviction to second degree murder. (*Id.* at p. 553.)

Steger does not change our conclusion. It concerned the sufficiency of the evidence showing willfulness, premeditation, and deliberation, as well as intent to inflict extreme pain. But the crime of torture does not require premeditation and deliberation. (*Massie, supra*, 142 Cal.App.4th at p. 371; *People v. Hale* (1999) 75 Cal.App.4th 94, 107 ["The intent required for torture as defined by section 206 is not identical to the intent for murder by torture under section 189"].) And Willis does not contend that the evidence here was insufficient to show that he intended to inflict extreme pain on John. He argues

10

that the evidence was insufficient to show that he intended to inflict pain *for the purpose of a sadistic pleasure*, and *Steger* said nothing about the sufficiency of the evidence to show a sadistic purpose.

For all of these reasons, substantial evidence shows that Willis acted with a sadistic purpose when he beat John.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ _____
                                               J.

We concur:

RAMIREZ _____
                          P. J.
MILLER _____
                          J.

11