Filed 5/25/22  P. v. Santana CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B309929 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA133463) |
| v. | |
| HECTOR SANTANA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

As Antonio V. put up Christmas decorations in front of his home with his two children, Hector Santana, a man Antonio did not know, approached him to ask for money for college. After Antonio gave Santana $5 from his pocket, Santana asked for a glass of water. As Antonio emerged from his home with the water, Santana held a gun. Fearful for his children, Antonio attempted to tackle Santana, and Santana shot Antonio. Antonio fell, and while he remained on the ground, kneeling, Santana shot at him again.

A jury convicted Santana of attempted murder (Pen. Code,[1] §§ 187, subd. (a), 664), found true the allegation that the attempted murder was willful, deliberate, and premeditated (§ 664, subd. (a)), and found true three firearm enhancement allegations that Santana used a firearm, discharged a firearm, and discharged a firearm causing great bodily injury (§ 12022.53, subds. (b), (c), (d)). The trial court sentenced Santana to seven years to life for attempted premeditated and deliberate murder and a consecutive term of 25 years to life for discharging a firearm, causing great bodily injury.

On appeal, Santana argues the evidence was insufficient to support the jury's finding of premeditation and deliberation. He contends he acted rashly in an effort to extricate himself from a struggle with Antonio. Under the deferential standard of review, however, we conclude sufficient evidence existed from which the jury could infer premeditation and deliberation, including planning activity and the manner of the attempted killing. Santana brought a loaded firearm to Antonio's home, engaged in the pretense of wanting a glass of water, and notwithstanding the

_____

[1] All unspecified statutory references are to the Penal Code.

2

presence of Antonio's children, brandished a handgun.  Although there may have been a brief struggle, even after Antonio was on the ground and Santana had the opportunity to run away, he chose instead to shoot at Antonio again.

Santana also argues the matter must be remanded for resentencing because the trial court was unaware of its discretion to impose a lesser firearm sentence enhancement under section 12022.53, subdivision (h).  We agree, remand for resentencing, and otherwise affirm the judgment.

## BACKGROUND

**A.    Factual Summary**

On December 3, 2009, at approximately 5:00 p.m., Antonio, his son, Jose, and his three-year-old daughter, were in the front yard of their house in Norwalk.  Antonio was setting up Christmas decorations.

Santana, who wore a backpack and was holding paperwork, approached Antonio and asked him for a donation for college.  Neither Antonio nor Jose had ever seen Santana before.  Antonio took $5 from his pocket and gave it to Santana.  Santana handed Antonio the packet of paperwork to fill out, and Antonio wrote his name, the amount he had given, and a telephone number on the paperwork.  Antonio returned the paperwork to Santana, who thanked him and stated that no one else had helped him yet.

Santana asked Antonio for a glass of water.  Antonio went inside the house and got a glass of water.  Antonio could not recall whether he locked the security screen door behind him.  When Antonio emerged from the house with the water, Santana was on the porch, near the door, and Antonio saw that Santana held a gun.  Antonio went towards Santana to tackle him because Antonio feared Santana would shoot his children.  As Antonio

3

exited the house, Santana outstretched his arm in a classic, shooting stance and shot him. Antonio tripped on some cables and fell. He told his son to get his mother and call an ambulance because Santana had shot him. Santana ran away. Antonio was struck three times, in his chest, side, and stomach. The entire encounter lasted approximately five minutes.

Jose testified that he heard loud booms, like gunshots "before [Antonio] was—outside on the ground" and before he saw Antonio tackle Santana. Jose also testified that after Antonio tackled Santana, Santana got up, started to run away, and while Antonio was still on the ground, Santana shot him. Jose heard about four shots.

Jose's friend, nine-year-old Ashley B., was in a car with her mother, driving to Jose's house when she saw Antonio and Santana struggling near the front door. Antonio chased Santana, and while Santana was running away in a backwards or sideways manner so he could still look at Antonio, who was kneeling, he shot Antonio.

As she parked the car, Irma B.,[2] Ashley's mother, saw Antonio and Santana running from the front door of Antonio's house. Then she saw Santana shooting a gun at Antonio, at a very close distance to him. Both men fell as they tripped over cables, and Antonio nearly caught Santana by his feet. Santana kept running and fired some more shots. She saw more than three flashes from the gun.

---

[2] At trial, the defense pursued a theory of mistaken identity. Both Antonio and Jose identified Santana in a police photograph line-up and in court as the shooter. Neither Ashley nor Irma was able to identify Santana because they did not see his face clearly during the incident.

Antonio's family called 911, and an ambulance transported him to the hospital, where he underwent surgery. He remained in the hospital for a month.

A sheriff's deputy found two nine-millimeter shell casings and the stack of papers Santana had been holding in the grass in the front yard. Santana's left thumb fingerprint was identified on the paperwork. In addition to the casings, there was a bullet hole in the window frame of Antonio's house and a "strike" from a bullet in the ceiling. An expended round was recovered from outside the house; it appeared the round had traveled through the wall of the house. A bullet fragment was found behind the front door.

## B.    Conviction and Sentencing

On April 12, 2018, the jury found Santana guilty of the attempted murder of Antonio and found true the allegations that Santana committed the attempted murder willfully and with premeditation and deliberation; and used a firearm, discharged a firearm, and discharged a firearm causing great bodily injury. The trial court scheduled the sentencing hearing for May 25, 2018.

Following approximately two years of continuances, on January 7, 2021, the matter came for sentencing before Judge Ito, who had not presided over the trial. The court sentenced Santana to seven years to life for the attempted murder and an additional 25 years to life for the discharging of a gun causing great bodily injury enhancement.

Santana filed a timely notice of appeal.

5

## DISCUSSION

### A. Substantial Evidence Supported the Jury's Finding of Premeditation and Deliberation

#### 1. *Legal Principles and Standard of Review*

Murder in the first degree includes, inter alia, any willful, deliberate, and premeditated killing. (§ 189, subd. (a).) " ' " 'In this context, "premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." ' " [Citation.] " 'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " [Citations.] "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." [Citation.]' [Citation.]" (*People v. Morales* (2020) 10 Cal.5th 76, 88.)

In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), our Supreme Court identified three categories of evidence that it "has generally found sufficient to sustain a finding of premeditation and deliberation: (1) planning activity, or 'facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing'; (2) motive, or 'facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a "motive" to kill the victim'; and (3) manner of killing, or 'facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a

6

"preconceived design" to take his victim's life in a particular way for a "reason." ' " (*People v. Morales*, *supra*, 10 Cal.5th at pp. 88-89, quoting *Anderson*, *supra*, at pp 26-27.) "[T]hese factors need not all be present, or in any special combination; nor must they be accorded a particular weight." (*People v. Garcia* (2000) 78 Cal.App.4th 1422, 1427.)

In reviewing the sufficiency of the evidence, an appellate court does not " ' "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.]' " (*People v. Boatman* (2013) 221 Cal.App.4th 1253, 1262, italics omitted.) If a finding of premeditation and deliberation are based on circumstantial evidence, a reviewing court must determine " 'whether the proof is such as will furnish a *reasonable foundation* for an inference of premeditation and deliberation [citation] or whether it "leaves only to *conjecture and surmise* the conclusion that [the] defendant either arrived at or carried out the intention to kill as the result of a concurrence of deliberation and premeditation." ' " (*Id.* at p. 1265, quoting *Anderson*, *supra*, 70 Cal.2d at p. 25; see *People v. Brooks* (2017) 3 Cal.5th 1, 57 [" 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence' "].)

2. *Analysis*

The evidence adduced at trial concerning Santana's planning activity and the manner of the attempted killing supports the jury's findings of premeditation and deliberation.

Santana brought a loaded gun to Antonio's home, demonstrating preparation. (See, e.g., *People v. Salazar* (2016) 63 Cal.4th 214, 245 [bringing loaded gun demonstrated preparation]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1082 [defendant arming himself was evidence of planning].) Additionally, he engaged in a ruse of needing a glass of water, thereby permitting himself time and opportunity to draw the gun while Antonio was inside the house. Although it is unclear whether, in that instant, Santana planned to murder Antonio or pursue some other course for which he felt he needed a gun, we defer, as we must (see *People v. Massie* (2006) 142 Cal.App.4th 365, 373),[3] to the jury's reasonable inference supporting the judgment that Santana intended to murder Antonio, especially in light of the evidence relating to the manner of the shooting.

---

[3] " 'Although the jury is required to acquit a criminal defendant if it finds the evidence susceptible of two reasonable interpretations, one of which favors guilt and the other innocence, it is the jury, not the appellate court, which must be convinced of his guilt beyond a reasonable doubt. [Citation.] We review the entire record in the light most favorable to the judgment and affirm the convictions as long as a rational trier of fact could have found guilt based on the evidence and inferences reasonably drawn therefrom.' " (*People v. Massie, supra*, 142 Cal.App.4th at p. 373, quoting *People v. Millwee* (1998) 18 Cal.4th 96, 132.) "Thus, ' "[i]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Massie, supra*, at p. 373, quoting *People v. Perez* (1992) 2 Cal.4th 1117, 1124.)

Santana argues the manner of the attempted killing suggests a hasty reaction in the midst of a struggle rather than a premeditated and deliberate killing. However, the jurors heard and assessed testimony from which they could have reasonably inferred that Santana deliberated beforehand whether to shoot or continue shooting at Santana. First, at the moment Antonio moved toward Santana in an attempt to tackle him, Santana did not immediately turn and run or shy away from Antonio. Rather, holding his arm straight out, he shot at Antonio. Santana shot at Antonio's torso, although he may have also been able to halt or slow Antonio from advancing if he shot at a less potentially fatal area, such as his legs or the floor.

Even more indicative of a deliberate decision to kill Antonio is the testimony that after Santana was in a position to escape, Santana shot at Antonio again. Jose and Ashley testified that Santana shot at Antonio when Antonio was on the ground or kneeling, *after* the men struggled or tripped over the cables. At that point, Santana was free of Antonio's attempted tackle and standing. Santana could have simply run. Yet the testimony from Ashley is that Santana ran sideways or backwards—a slower means of escape than running forward—and shot at Antonio. Her mother, Irma, corroborated this testimony, testifying that Santana shot at Antonio, then after Antonio tripped, Santana fired more shots at Antonio as he ran. (See *People v. Lunafelix* (1985) 168 Cal.App.3d 97, 101 [affirming finding of premeditation when, inter alia, "[h]aving disabled the victim by knocking him to the floor, and while the victim was still in this vulnerable position merely trying to get up, [the] appellant cocked or released his gun, pointed it at the victim and began shooting]"]; *People v. Watkins* (1967) 248 Cal.App.2d 603, 609

[concluding jury could reasonably infer deliberation, "although briefly held," where the defendant "struck successive blows upon the victim's head with a crowbar, that after being interrupted both defendants dragged the victim to a vacant lot, where [the defendant] continued to strike him with the crowbar"].)

Santana also maintains that the evidence of a motive to kill is "nonexistent." We agree that the Attorney General's theory that Santana shot Antonio because he was disappointed with receiving a $5 donation is speculative. However, there need not be evidence of all three *Anderson* factors for an appellate court to affirm a jury's finding of premeditation and deliberation. (See *People v. Garcia, supra*, 78 Cal.App.4th at p. 1427.) Accordingly, we conclude the evidence of planning and the manner of the attempted killing provide a sufficient basis upon which a rational trier of fact could find the attempted murder was premeditated and deliberate.

## B.     Sentencing

Santana argues we should remand the matter to provide the trial court an opportunity to exercise its discretion in deciding whether to impose a lesser sentence relating to the firearm enhancements under section 12022.53. We agree.

### 1.     *Factual Summary*

In an April 17, 2018 sentencing memorandum, the prosecution indicated that Santana (1) had been convicted of attempted murder, which the jury found to be willful, deliberate, and premeditated, and for which the sentence under section 664, subdivision (a) was life with the possibility of parole; and (2) had been found to have discharged a firearm, causing great bodily injury, for which the sentence under section 12022.53, subdivision (d) was 25 years to life. The memorandum did not

10

state that the jury had also found true two other, lesser firearm enhancements for use and discharge of a weapon under section 12022.53, subdivisions (b) and (c) or that the court had discretion to impose a sentence for a lesser enhancement.

During the May 25, 2018 sentencing hearing, defense counsel informed the court that Santana was 19 years old at the time he shot Antonio, and asked for a continuance to allow for a *Franklin* hearing.[4]  The trial court granted the request.  The matter was continued several more times.

On October 28, 2020, the parties appeared before the judge for sentencing.  The trial court observed that "Santana was convicted of one count of [attempted murder under sections] 664[ and] 187 . . . [s]o that's a life sentence for [c]ount number [one].  And then he was—there was an allegation pursuant to [section] 12022.53[,] subdivision (d) . . . [w]hich is an additional 25 years to life. . . .  There's not a great deal of discretion in this case."  Defense counsel agreed:  "[T]here's not a great deal of discretion for the court."  Still, defense counsel requested additional time to gather information relevant to a *Franklin* hearing, including Santana's records from the Department of Children and Family Services (DCFS).  The court continued the sentencing hearing to January 7, 2021.

On January 7, 2021, the judge stated he had read the People's two-to-three-year-old sentencing memorandum, and observed, "[t]his is pretty much a stated nondiscretionary

---

[4] *People v. Franklin* (2016) 63 Cal.4th 261 held that an eligible youth offender must have an opportunity to "make a record of information relevant to his eventual youth offender parole hearing."  (*Id*. at p. 284.)

11

sentence given the nature of the conviction and the enhancement that was found true by the jury." It sentenced Santana as follows: "Count number 1 probation is denied. Typically[,] I would be listing off the determinate terms first, but there is no true determinate term on this case. He has two life counts. In the case of count number 1 it is a term of seven to life. I think it's actually a life term with the possibility of parole. . . . It's a straight life term. . . . In addition and consecutive thereto the court will impose 25 years to life on the enhancement pursuant to [section] 12022[, subdivisions (b)(d)] [*sic*]. This is a discharge of a firearm and that discharge causing great bodily injury."

Thereafter, defense counsel indicated Santana wanted to make a statement to the court. The trial court encouraged Santana to submit it as part of his parole packet. In response to defense counsel's question whether the court was indicating that the statement would have no impact, the court responded, "It's a nondiscretionary. It's seven to life and the gun is 25 to life in addition to that." The court permitted Santana to make a statement, and when Santana indicated he would have more information to submit to the court, the court responded, "You can submit it to the parole board, Mr. Santana. This is a nondiscretionary sentence as far as I'm concerned. I'm denying [the prosecution's] motion to strike any enhancements. If they were going to make one—I suspect they are for the record." The prosecutor responded in the affirmative. The court denied the motion and stated, "I'm sentencing you and your entire packet will be made part of your parole packet."

2.    *Analysis*

For certain enumerated crimes including attempted murder, section 12022.53 requires a sentencing court to impose

12

an additional and consecutive sentence of 10 years for use of a firearm; an additional and consecutive sentence of 20 years for the discharge of a firearm; and an additional and consecutive sentence of 25 years to life for the discharge of a firearm causing great bodily injury. (§ 12022.53, subds. (b)-(d).) Prior to January 1, 2018, a sentencing court had no discretion to strike any of the firearm enhancement allegations under subdivisions (b) to (d), and, if more than one enhancement were found true, required the court to impose the enhancement that provided the longest term. (Fmr. § 12022.53, subds. (f), (h) [effective Jan. 1, 2012 to Dec. 31, 2017].)

Effective January 1, 2018, Senate Bill No. 620 (2017-2018 Reg. Sess.) amended section 12022.53 to provide "[t]he court may, in the interest of justice pursuant to [s]ection 1385[5] and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. . . ." (§ 12022.53, subd. (h), as amended by Stats. 2017, ch. 682, § 2; see *People v. Tirado* (2022) 12 Cal.5th 688, 700 [holding § 12022.53, subd. (h) allows a sentencing court to impose a lesser, uncharged enhancement].)

The Attorney General does not dispute the trial court believed it lacked discretion to impose a lesser sentence. Rather, relying on *People v. Scott* (1994) 9 Cal.4th 331, the Attorney

---

[5] Section 1385, subdivision (c) requires a court to "dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. . . ."

General argues that Santana forfeited this issue on appeal by failing to object during sentencing. *Scott* held forfeiture "should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (*Id.* at p. 353; see also *People v. Trujillo* (2015) 60 Cal.4th 850, 856-857 ["[C]laims of error in the trial court's exercise of its sentencing discretion are . . . forfeited if not raised at the sentencing hearing. Such errors are essentially factual, and thus distinct from ' "clear and correctable" ' legal errors that appellate courts can redress on appeal 'independent of any factual issues presented by the record at sentencing' "].)

The matter before us is distinguishable. Whereas *People v. Scott* concerned "complaints about the *manner* in which the trial court exercises its sentencing discretion" (9 Cal.4th at p. 356, italics added), Santana asserts that the court erroneously believed it had no discretion, and the Attorney General does not contest this. "[W]hen [the trial court's] misapprehension is affirmatively demonstrated by the record," the court may exercise its discretion to review the decision. (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1023, 1026; see *In re Sean W.* (2005) 127 Cal.App.4th 1177, 1181-1182 [no forfeiture where the court misapprehended its discretion].) Additionally, we may exercise our discretion to consider an issue on the merits where, as here, it involves " 'a pure question of law which is presented by undisputed facts.' " (*People v. Hines* (1997) 15 Cal.4th 997, 1061; see *People v. Williams* (1998) 17 Cal.4th 148, 162, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party. . . .

14

Indeed, it has the authority to do so. . . . Whether or not it should do so is entrusted to its discretion"].)[6]

The court's repeated statements that the sentence was nondiscretionary affirmatively demonstrate it was unaware of its discretion under section 12022.53, subdivision (h) to strike one or more firearm enhancement, and the Attorney General does not argue any differently. Accordingly, we exercise our discretion to consider the issue.

"When being sentenced, a defendant is entitled to decisions made by a court exercising informed discretion. [Citation.] A court acting while unaware of the scope of its discretion is understood to have abused it. [Citation.]" (*People v. Tirado*, *supra*, 12 Cal.5th at p. 694.) "In such circumstances, . . . the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Notwithstanding misunderstanding the court's discretion, Santana and his counsel referred to certain factors that may have been relevant to his sentence, in the interests of justice, including Santana's age at the time of the crime (19 years old) and a possible history with DCFS. The court did not give full consideration to defense counsel's arguments or Santana's

_____

[6] We may also exercise our discretion to review the issue to forestall a claim of ineffective assistance of counsel. (*People v. Leon*, *supra*, 243 Cal.App.4th at p. 1023; *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 310.) Here, neither Santana's counsel nor the prosecutor clearly informed the court of its sentencing choices under section 12022.53.

presentation relating to these factors. Instead, it urged Santana to present the information to the parole board. Thus, it is not clear that if the court had known of its discretion and heard the mitigating information, it would have imposed the same sentence.

The Attorney General contends Santana cannot demonstrate that the trial court would have imposed a different sentence if it had known of its discretion. According to the Attorney General, the trial court's denial of the prosecutor's motion to strike firearm enhancement allegation indicates that, even if it knew it had discretion to impose a lesser enhancement term, it would not have done so. But the trial court could have been reluctant to strike the enhancement because it was unaware that it could impose a lesser enhancement in its place. The judge, who did not have the benefit of presiding over the trial, relied on the sentencing memorandum to inform him of the jury's findings. However, the sentencing memorandum did not analyze the jury's findings pursuant to subdivisions (b) and (c).[7] That the court was unaware of the lesser enhancements is further demonstrated by the fact that the court failed to sentence Santana pursuant to those enhancements and stay those sentences as it normally would and should have. (See *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1129-1130 [concluding the proper procedure is for the trial court to impose then stay additional firearm enhancements under § 12022.53].) Indeed, the

---

[7] The Supreme Court's holding that courts may impose an *uncharged*, lesser firearm enhancement under section 12022.53 came more than a year after Santana's sentencing hearing. (See *People v. Tirado*, *supra*, 12 Cal.5th 688.)

Attorney General concedes we should order the sentencing court to impose and stay the enhancements under section 12022.53, subdivisions (b) and (c) to the extent they are not stricken.

Accordingly, we remand the matter for resentencing in order to provide the court an opportunity to exercise its discretion under section 12022.53, subdivision (h).

## C.  Abstract of Judgment

The Attorney General argues, and Santana does not dispute, that the abstract of judgment should be amended to correct a clerical error: the attempted murder occurred in 2009 and not 2018, as currently listed on the abstract of judgment.  We agree that this is appropriate.  (See *People v. Wilson* (2010) 186 Cal.App.4th 789, 823; see also *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["Courts may correct clerical errors at any time, and appellate courts (including this one) that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts"].)

17

## DISPOSITION

We reverse and remand the matter for resentencing and order the trial court to correct the abstract of judgment to reflect that the attempted murder occurred in 2009.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED


MORI, J.*


We concur:



ROTHSCHILD, P. J.



BENDIX, J.

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.