Filed 12/17/25  P. v. Calderon CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAYMES CALDERON,<br><br>    Defendant and Appellant. | 2d Crim. No. B336462<br>(Super. Ct. No. BA514203)<br>(Los Angeles County) |

Jaymes Calderon appeals the judgment after a jury convicted him of aiding and abetting second-degree robbery (Pen. Code,[1] § 211).  He contends there was insufficient evidence of force or fear and intent to support the conviction.  He also contends there was a jury instruction error.  We affirm.

---

[1] Further unspecified statutory references are to the Penal Code.

## FACTS AND PROCEDURAL HISTORY

Byeonggeon Kim owned a consignment store in Los Angeles that specialized in selling handbags. About two and a half years before the current offense, Kim's store was robbed, and he experienced "trauma" from that previous robbery. Since then, Kim maintained a store policy of admitting only one customer at a time.

In March 2023, Kim was working alone when Calderon entered his store. Kim then broke his own policy and allowed a second individual inside his store. Kim had seen this other individual talking with Calderon outside the store. Upon entering the doorway of the store, the second individual used his left shoulder to push Kim into the store, while making a waist-level motion with his right hand. Kim did not see a weapon, but he believed the man was indicating he possessed a gun. Kim testified he was in fear. Kim pushed past the second individual in the doorway. He exited his store and stood outside next to it. The second individual stayed at the doorway and held the door open. Meanwhile, Calderon began grabbing multiple items from inside the store. Calderon and the second individual then ran out of the store. Kim testified they ran in the same direction across the street—both of them weaving in and out of traffic. He estimated the total value of the stolen items to be around $13,750.

Hussein Saab owned a clothing store one block from Kim's store. Around the time of the robbery, Saab was outside his store when two individuals carrying handbags ran past him. They were running towards a champagne-colored Infiniti with a white male standing by the open driver's side door. The two men got

into the back seat of the Infiniti.  The driver got into the vehicle, made a U-turn, and drove away.

About a month later, police officers searched Calderon's apartment and found a backpack that had been taken from Kim's store.

The jury found Calderon guilty of second-degree robbery (§ 211).  In a bifurcated proceeding, the trial court found true that Calderon had two prior "strike" offenses.  (§§ 667, subd. (d); 1170.12, subd. (b).)  The court granted Calderon's *Romero*[2] motion and struck one strike offense.  The court sentenced Calderon to 10 years state prison (upper term of five years, doubled for the strike).

## DISCUSSION

### *Substantial evidence*

Robbery is the "felonious taking of personal property in the possession of another, from [their] person or immediate presence, and against [their] will, accomplished by means of force or fear." (§ 211.)  Calderon challenges the "force or fear" element, contending there was insufficient evidence that the taking of the handbags was accomplished by force or fear.  We disagree.

Whether force or fear was sufficient to satisfy that element for robbery is a factual question for the trier of fact.  (*People v. Muniga* (1991) 234 Cal.App.3d 1703, 1707-1708.)  On appeal, we will uphold the finding so long as it is supported by substantial evidence.  On a substantial evidence review, "we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

3

could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) It is "the province of the trier of fact to decide whether an inference should be drawn and the weight to be accorded the inference." (*People v. Massie* (2006) 142 Cal.App.4th 365, 374.) "An appellate court will not interfere with the decision of the trier of fact, even if the court believes that a contrary conclusion would have been reasonable." (*Ibid.*)

"To establish a robbery was committed by means of fear, the prosecution 'must present evidence ". . . that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." ' [Citations.]" (*People v. Morehead* (2011) 191 Cal.App.4th 765, 772.)) The force or fear element of robbery is satisfied if the force or fear "causes the victim to part with his property, and the victim perceives any overt act connected with the commission of the offense." (*People v. Brito* (1991) 232 Cal.App.3d 316, 325 [force applied by the defendant caused victim to flee and enabled the defendant to take the victim's property].) The fear which induces the victim to part with his property 'may be either: … 1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or … 2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery.' (Pen. Code, § 212.)" (*People v. Wolcott* (1983) 34 Cal.3d 92, 100.) "The threat to inflict injury required for a robbery, moreover, need not be accompanied by the present ability to carry it out. Thus, the

4

use of an unloaded gun [citations], a toy gun [citation] or a simulated gun [citation] is sufficient if it causes the victim to part with his property." (*Ibid.*)

Under an aiding and abetting theory, an aider and abettor is liable for their accomplices' actions as well as their own. "It obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120.) Thus, it is not necessary to show Calderon personally used force or fear, as he can be held liable if substantial evidence supports his accomplice used force or fear to accomplish the taking.

Here, substantial evidence supports that the taking of property was accomplished by use of fear. The surveillance videos and Kim's testimony reflect that the second individual stood in the doorway, pushed Kim with his shoulder, and made a motion near his waistline. Kim testified that he understood this motion to mean the individual had a gun. He said that he felt "a lot of fear," and believed that "something bad may happen" to him. He felt he "need[ed] to get out of [his] store" at that moment. The surveillance video allowed the jury to observe the accomplice's interactions with Kim, including his movements pushing Kim into the store and his hand movements near his waistline. Together, this evidence was sufficient to support a reasonable inference that fear was used to accomplish the taking.

Calderon asserts there was insufficient evidence of fear under an objective standard. In so arguing, he focuses on Kim's subjective testimony that he felt fear and that his previous "trauma[tic]" robbery experience shaped his subjective fear. But, even if we are to assume there is both a subjective and objective component to the force or fear element, the evidence is still

5

sufficient to support that a person in Kim's position would objectively and reasonably feel fear. The jury was able to observe the interaction through the surveillance video from which they could draw such a reasonable inference.

Calderon also contends there was insufficient evidence to prove specific intent to commit the robbery. We again disagree. To convict a person of robbery, the prosecution must prove beyond a reasonable doubt that the perpetrator harbored a specific intent to permanently deprive the person of the property. (*People v. Anderson* (2011) 51 Cal.4th 989, 994.) An aider and abettor is guilty of robbery if they act with "(1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, [and] (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* 35 Cal.3d 547, 561.) In order to be held liable as an aider and abettor, "the requisite intent to aid and abet must be formed before or during such carrying away of the loot to a place of temporary safety." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1161, italics omitted.) Among the factors which may be considered in determining aiding and abetting are presence at the crime scene, companionship, conduct before and after the offense, and flight. (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094-1095.)

Substantial evidence supports that Calderon shared with his accomplice the specific intent to permanently deprive Kim of his property. Here, there was evidence that Calderon and the second individual were working together. Kim testified that he observed Calderon and the other individual talking outside the store before Calderon entered the store. He also said the two

6

men ran in the same direction across the street when they left the store.

Calderon contends the evidence that they left in the same direction is disputed by the video showing that the two men left the store in different directions. But, if our review of the record shows that there is substantial evidence to support the judgment, we must affirm, even if there is also substantial evidence to support a contrary conclusion and the jury might have reached a different result if it had believed other evidence. (*People v. Riley* (2015) 240 Cal.App.4th 1152, 1165-1166.) In any event, the surveillance videos depict only a limited view of the doorway area, and thus, it does not necessarily contradict Kim's testimony that the two men headed in the same direction after leaving the store and crossing the street.

Kim's testimony was further corroborated by Hussein's testimony that he saw two men carrying handbags run past him and get into the backseat of a vehicle around the same time and location of where the robbery took place. Furthermore, the jury saw multiple surveillance videos from which they could draw inferences that the two men were working together. The surveillance video depicts Calderon grabbing multiple bags almost immediately after Kim left the store while his accomplice remained standing around the doorway and held the door open. After Calderon grabbed the bags, both men left at the same time. The accomplice grabbed no additional items. A reasonable jury could infer that the accomplice's role was to watch the doorway while Calderon's role was to grab the handbags. In sum, the evidence was sufficient to support that Calderon knew of his accomplice's unlawful purpose, intended to commit and facilitate the robbery, and actually aided in the robbery. The evidence is

7

sufficient to support that Calderon and his accomplice worked together and his accomplice shared the same intent to deprive Kim of his property.

*Jury instruction*

Calderon contends the trial court erred in instructing the jury with CALCRIM No. 224 instead of CALCRIM No. 225. We conclude there was no reversible error.

CALCRIM Nos. 224 and 225 are both instructions regarding circumstantial evidence.

The jury was instructed with CALCRIM No. 224 as follows:

> Before you may rely on circumstantial evidence to conclude that a fact is necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.
>
> Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable.

CALCRIM No. 224 should be given when the prosecution relies on circumstantial evidence to prove any element of the

8

case. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1171-1172 (*Samaniego*).) But it need not be given where circumstantial evidence is incidental to and corroborative of direct evidence. (*People v. McKinnon* (2011) 52 Cal.4th 610, 676.)

CALCRIM No. 225 is a more specific alternative instruction used in place of CALCRIM No. 224 " 'when the defendant's specific intent or mental state is the only element of the offense that rests substantially or entirely on circumstantial evidence.' " (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1172.)

Here, the trial court rejected Calderon's request to instruct on CALCRIM No. 225 in lieu of CALCRIM No. 224 because it found "the People are relying on circumstantial evidence for reasons other than just the specific-intent portion." Calderon argues this was error because "[n]o other element of the crime is substantially supported by circumstantial evidence except for specific intent." However, any error in instructing the jury with CALCRIM No. 224 was harmless under either standard of error. (*Chapman v. California* (1967) 386 U.S. 18, 24 [error was harmless beyond a reasonable doubt]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [error harmless where no reasonable probability the defendant would have received a better outcome].)

"CALCRIM Nos. 224 and 225 provide essentially the same information on how the jury should consider circumstantial evidence, but CALCRIM No. 224 is more inclusive." (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1172.) " 'Because the trial court delivered the more inclusive instruction under [CALCRIM No. 224], its refusal to . . . instruct with [CALCRIM No. 225] clearly was not prejudicial error.' [Citation.]" (*Ibid.*) This is so because CALCRIM No. 224 instructed the jury how to evaluate circumstantial evidence with regard to intent, as well as the

9

other elements of the crime.  (*Ibid.*)  The jury was instructed that all elements of robbery, including intent, must be proven beyond a reasonable doubt.  Therefore, any error, if present, was not prejudicial.

                    DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.



                         HIPPACH, J.*


We concur:



          BALTODANO, Acting P. J.



          CODY, J.


---

   * Judge of the Santa Barbara Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Alison S. Matsumoto, Judge

Superior Court County of Los Angeles

_____

Sydney Banach, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.